And we will move on to the last case for today for argument, Pemco Mutual Insurance Company v. Foley. And we will move on to the last case for today for argument, Pemco Mutual Insurance Company v. Foley. You may proceed, Ms. Miller. Thank you. May it please the Court, my name is Emily Miller. I'm counsel for Appellant Sean Foley. And I'd like to reserve five minutes for rebuttal, if I may. Watch the clock. I'd like to focus on the homeowner policy today. And I'd like to start with the two decisions from the Wakeman case, which are the recent cases that were submitted to this Court in a 28-J letter. The first opinion is from June, and the second opinion is from August. The second opinion really just recommits to the holding in the first opinion. So I'm going to talk about them as one opinion, but there are really two opinions. The significance of the Wakeman decisions is that it confirms Mr. Foley's interpretation of this policy under Oregon law. One of the critiques that Pemco had in the briefing is that while Mr. Foley was following standards, while Mr. Foley could cite to Giavera v. House, which is a case that confirmed the reasonableness of his interpretation on virtually the same policy language on highly analogous facts, that Mr. Foley couldn't cite to an Oregon case that was on this issue. And that's Wakeman. Wakeman plugs that gap. It brings it home to Oregon. So to clarify, Wakeman dealt with the same phrase, uninsured, the same definition of that phrase, one or more insureds, and it dealt with the same severability of insurance provision. And it held that when you read uninsured, defined in that way in the policy, within an exclusion, in that case it was a criminal acts exclusion, and you read that in conjunction with the severability of insurance provision, it's ambiguous. And if it's ambiguous, you construe it against the insurer. What about the Hoffman structure, though? How does that fit into these new cases? Thank you for asking. So the Hoffman case is really best understood as a case about how to  Hoffman dealt with one particular kind of ambiguity, and that's when the parties are offering competing plausible interpretations of those words in isolation. Mr. Foley submits that he has done that here. PEMCO disagrees, and the district court below disagreed. So what's important to understand is that that's not the only kind of ambiguity that the Hoffman standards recognize, because later the Oregon Supreme Court in Hamilton, in an opinion authored by the same justice, Justice Gillette, clarified that when policy language is not clear and unambiguous for, quote, some reason such as indefiniteness, erroneous usage, or form of expression, then that language must be put through the contextual scrutiny that Hoffman describes. And if the language, the obscurity, yes. Can you put your argument into more concrete terms in terms of what you think the, the Hoffman structure is still, still valid. And I'm just trying to understand specifically what you think creates an ambiguity in this case. In this case, frankly, there's many things that create an ambiguity. So it's not in any one of these things. Tell me the one, tell me the one that bears on the issue of coverage and the exclusion that excludes vehicles that are owned by an insured. The starting point is to look at the definition of an insured in the policy, which is one or more insureds. One or more is not further defined. So to understand the common meaning of those words, we need to go to the dictionary and we need to be looking up the dictionary definitions of one or more. And when you do that, one of the definitions in there is a particular unit or larger number of particular units. So one or more insureds. You're talking about applying a Webster's definition to the phrase one or more. Correct. And just in sort of general legal parlance, often to avoid issues involving the use of a singular or plural and to avoid unduly complex drafting language, agreements often contain a reference to the singular also can incorporate the plural or the plural can incorporate the singular. So I'm just, you know, we can read all sorts of complexities into anything almost, but you know, why should that be done here beyond just what seems to me to be a reference to what I just stated? Well, your Honor, the standards for insurance policies are if they can be read more than one way, then it must be interpreted in favor of coverage. And to read it more than one way is from the perspective of the ordinary insured. And there's other contextual clues in here. PEMGO itself uses uninsured to refer to the same uninsured against whom a claim has been made. That's in the insuring agreement. Doesn't the logical conclusion of your argument lead to absurd results? I do not believe so, your Honor. So explain to me how this exclusion would work in your mind. Using your definition under Webster's. I'm paraphrasing Webster's to mean the dictionary. Sure. If the insured at issue, the insured who is seeking coverage, is the one who owns the ATV, then there's no coverage. If the insured at issue does not own the ATV, then there is coverage. And that follows the severability of insurance provision. But isn't there a specific language in the policy that defines the definition of an insured as being basically someone living in the household that's under 21 years old? And also, I'm just paraphrasing from memory, a family member. So with that, you know, that other rule of construction that when there's a specific provision, you don't sort of go off on generalities and make things overly complicated. So what's ambiguous about that definition? Your Honor, we all agree that Kendra Casper isn't insured under this policy. So the ambiguity is when you have multiple insureds under this policy and only one of them owns the ATV, or in this case, two of them own the ATV. How does this apply when a different insured is the one using it? And, you know, in this case, it's the unemancipated minor of the parents. It could be something else under this definition of insured. It's an expansive definition. It could be a 40-year-old cousin of Joseph Casper. And a 40-year-old cousin isn't expected to go out and buy insurance for this ATV. If PEMCO wants this to apply to all insureds, then it needs to say that clearly. And so there's another interpretation that is in the briefing that I don't want to overlook, because I think this addresses your concern over simplicity. And that is if you take one or more and you plug it right into that homeowner MBL exclusion, there's coverage. Excuse me. The exclusion applies unless the ATV is not owned by one or more insureds. That's the literal reading of how they wrote this policy. So taking it at its most simplistic form, this was not owned by one insured, Kendra Casper. Therefore, there's coverage. So under any view of this, Mr. Foley's position is that there is a reasonable way to read this based on the words PEMCO actually used that affords coverage. And I don't want to overlook the severability of insurance provision either, because that is one place that the district court below erred, is by not considering this policy as a whole. We have to read it from beginning to end to understand whether there's other provisions that modify, amend, delete, change, affect what we've just read. Counsel, I mean, it seems to me that the argument you just made about, you know, it is not owned by an insured because there is an insured in the world who doesn't own it. I mean, it seems like an example of what Judge Ferguson was, the point that he made that, you know, just because there is some possible syntactic interpretation doesn't mean that it's a reasonable one. I mean, would you, for example, say that Foley's argument today is not being made by a lawyer? There are lawyers in the world who are not presently making Foley's argument. But we wouldn't say that the argument is not being presented by a lawyer. So why doesn't that sort of common sense understanding similarly foreclose that interpretation of not owned by an insured? Your point is well taken, Your Honor. I think the point I'm trying to make is that whether we look at this simplistically in isolation or whether we really look at this entire policy as a cohesive document and we look at how PEMCO has actually used this, we look at where PEMCO says any insured when it means truly any insured, and we read the severability of insurance provision, we think about how any insured would affect the property coverage parts, compliance with the statutes, which requires the insured, that we look at the whole policy as a cohesive whole. And when we do that, we still arrive at coverage. So, oh, I see that I am past my 10 minutes. So I will save... Your time. You want to reserve the rest? I will reserve the rest of my time. Thank you. Very well. May it please the Court. John Bokhoffner appearing on behalf of PEMCO. This case turns on whether an ATV owned by two named insureds, Joseph and Tara Casper, was not owned by an insured or under the definition in the policy not owned by one or more insureds. It's stipulated that Joseph and Tara Casper are named insureds under the policy. The policy provides that named insureds under the definition are insureds. It's stipulated that those named insureds owned the ATV driven by their resident daughter. And it's stipulated that the homeowner's policy excludes liability for motor vehicles except in very limited circumstances. And it defines those. It must not be owned by an insured, specifically defined in the policy as one or more insureds. I submit to you that Judge Predersen hit the nail on the head, and Judge Miller as well. It must be remembered this is a homeowner's policy. This is not an automobile policy. It was stipulated that there is no coverage under the automobile policy because they did not purchase coverage for that ATV. This is a homeowner's policy, and those policies are designed to protect property primarily and then provide liability coverage for property related types of claims. Well, but it does provide coverage if you were to go, an insured were to go rent an ATV. They're on vacation somewhere. They rent an ATV. They don't own it. It does provide coverage. So it's, you know, sometimes these homeowner's policies provide a little broader coverage, recognizing that you're making the distinction between, you know, a vehicle policy where the it does allow coverage under certain circumstances for liability arising from the use of someone else's ATV, correct? That is absolutely correct, Judge Predersen. But those circumstances are very narrowly drawn, and none of those circumstances apply in this case, precisely because it's the named insureds that we're coming down to in this case is what was the intent of the parties. Would an ordinary purchaser of a homeowner insurance really think that a vehicle that they own could qualify as a vehicle not owned by an insured or owned by one or more insureds? I submit to you that Judge Hernandez got it correct. That is not a, the way he says, offering an alternative interpretation alone cannot establish an ambiguity. A term is only ambiguous where there are two or more plausible interpretations. Defendant's interpretation is not plausible in the face of the express definition supplied by the policy. So can you just tell me, break down for me in your mind, the petitioner's argument for why there is an ambiguity? Essentially, their argument is, as I understand it, is that unless Kendra Casper owned the ATV, then it's not a vehicle owned by an insured. And the way they get there, I think, is they're arguing that the severability provision in the policy somehow creates three separate policies, one for the insured and one for the insured. And if the plaintiff in a case or the claimant in a case chooses to only pursue a claim against one of the insureds who doesn't happen to own the vehicle, well, then that must mean that there is coverage for that person under the severability provision. The flaw with that argument is that under the Hoffman analysis, you first look at whether or not there's an ambiguity and if there's a plausible argument. If in the very first tier of the three-step analysis or at any step in the analysis, as the Court says at page 470 of Hoffman, the Court concludes that it's not ambiguous, then you stop the analysis at that point and the Court then makes a ruling. And that's precisely what we are arguing here, is that there is no ambiguity about this particular circumstance. I cannot fathom a circumstance in which, remember, this is the person who's purchasing the insurance. The named insured owns a vehicle. How could they possibly believe that not owned by an insured would mean that they're going to have coverage, even though they own the vehicle? I'm dumbfounded by that argument. So you never get to the severability issue because the argument is nonsensical. And in order to be unambiguous, it just, excuse me, in order to be ambiguous, it needs to not make sense. It needs to be a sensible argument that's being made. And what's being made here by Foley is not a sensible argument. Our position is there's only one plausible interpretation, and that's not strained for the purpose of creating an ambiguity. That's the rule under Oregon law. A vehicle owned by two named insureds just simply cannot qualify as a vehicle not owned under the definition by one or more insureds because two insureds own the vehicle. Foley's interpretation would also require that the court insert language into the policy definition that's not owned by an insured that is seeking coverage. That is not what is in the policy. And Oregon law specifically under ORS 42.230 mandates that the construction of a contract like this requires determining what is contained therein and not to insert what is omitted or omit what has been inserted. That's precisely what they would have us do in order to have coverage. It requires that the exception be read as not owned by one or more insureds under Oregon law. And one or more insureds under the definition of the policy includes the named insureds. So as a matter of law, that's why you don't get to even the second point of analysis under the Hoffman case law. I submit to you again that Judge Hernandez correctly determined that there's not an ambiguity in this case. He also correctly determined that it's Foley that has the burden of proving an exception to the motor vehicle exclusion under the red case and employers' insurance versus Tektronix because this is, there's a general exclusion against motor vehicle liability and then there's created exceptions to that general exclusion. The party that is seeking coverage bears the burden of proving that exclusion applies. The plain and ordinary meaning of any, as Judge Hernandez said, is one or more as defined by Webster. That means that any and one or more are essentially the same and that's how this policy should be read. Whether you either consider it as any or you look at the plain and ordinary meaning of one or more, that has to include either one or more. And in this particular case, more insureds do own this particular vehicle. I want to briefly touch on and I welcome any further questions, but I briefly want to touch on Wakeman and Giovera. First of all, in Wakeman it's distinguishable because there you're looking at particular actions by a particular insured, one insured that's being imposed on another insured. In this case, we're looking at an objective status of the vehicle, objective ownership. It's not a situation where some action by one insured prejudices the protections afforded to another insured. This is a situation where the policy defines the scope of coverage. And that scope of coverage excludes vehicles that are all-terrain vehicles that are owned by any insured. And the reason is pretty obvious, that expands significantly the risk associated with the insurance policy without any corresponding premium. So it makes sense that there would not be coverage for an owned vehicle that isn't listed on a policy and is being used on property that's not owned by the insured. Giovera was decided under Florida law and did not follow the draft law. And in that opinion, they specifically talk about that if they can find any ambiguity, then the policy is construed against the drafter. That is not how Hoffman and Oregon law applies. In Oregon, you first look at the provision itself and determine under a plain reading of that version, of that provision, whether or not it is ambiguous. If it's not ambiguous, if it does not have a reasonable plain meaning, a plausible meaning that's different than how the insurer is interpreting it, then you don't go any farther. But if there's an ambiguity that's found, and of course Judge Fernandez found no further analysis, which is to look in the context of the policy. And when you look in the context of the policy, again, a severability provision, as discussed in the Ristine case, albeit in dicta, they talk about that if you were to say that a severability provision excludes then, or applies to exclusions and just not the coverage that's available to each independent insured, then it does extreme harm to the scope of the coverage and to the intent of the parties, which I remind the Court, that's really what we're trying to get to here, is what is the intent of the parties? And looking at the policy to determine what that intent is. I would also note that Giovera's never been cited by any court since 12 years ago, not even courts in Florida. As far as we could find, we could never find any citation to Giovera. The Wakeman decision, unfortunately, that was not appealed. It was settled, as I understand it. So we don't have an opportunity to have a decision from the Court of Appeals addressing whether or not that's a correct analysis. But again, I submit to you that you first have to look at that definition and that exclusion. In Wakeman, they're looking in the context of the policy as a whole. Judge Simon first found ambiguity in the provision and then applied the analysis to find that it was not enforceable. It was ambiguous and needed to be construed against the insurer. In this case, as Judge Hernandez found, there is no ambiguity in the first initial stage. I submit to you that ownership by named insureds, as agreed here, precludes the ATV from qualifying for the exception to the rule. If there are no further questions, I will go ahead and conclude. Thank you very much. There's no extra credit for using all your time, so that's good. All right. Ms. Miller, you have four and change. Thank you. First of all, PEMCO's view of the Hoffman process is way too narrow. Note that PEMCO is not discussing Hamilton at all. Hamilton extends Hoffman, and we see that in the way the district court in Wakeman talks about Hoffman and the Hoffman standards. In Wakeman, the district court summarizes the Hoffman standards as essentially a three-step process. First, you identify whether there is an ambiguity. Hoffman is not about creating loopholes where if you don't thread the needle one particular way, that ambiguity can survive. This policy must be read as a whole. There must be no ambiguities in it. That's the burden. So in Wakeman, the first step is, is there an ambiguity of some kind? If there is, then you go through the contextual scrutiny that Hoffman describes. That's the heart of Hoffman, is how do we resolve the ambiguity? That's the contextual scrutiny. That's what the district court did not do below. That's why the district court below never got to the severability of insurance provision. And then if that contextual scrutiny does not resolve the obscurity in the language, then you resolve it in favor of coverage and against the insurance company. That's the Hoffman standards. When you look at it, not just what's in Hoffman, but Hoffman and its progeny and the way it's been interpreted. I'd like to just, if I may, provide you with an example of the language that Hamilton was talking about. This was an exclusion in an auto policy, and it excluded coverage for bodily injury or property damage to you or any family member to the Oregon financial responsibility law. I think most people in this room would probably be able to understand what that means. I imagine the insurance company in that case argued that to read it any other way was preposterous, and yet the Oregon Supreme Court found that language not comprehensible from the perspective of an ordinary insured. We have to remember that we are viewing this from the perspective of ordinary insureds. They are not sophisticated in the law. They're not sophisticated in insurance. And PEMCO is trying to distinguish Wakeman on the basis of what kind of exclusion. Is it an exclusion for conduct? Is it an exclusion for status? That's not in the policy. Severability says this insurance applies separately to each insured. It doesn't talk about whether it says the insured or uninsured or what kind of exclusion or where it is. The whole insurance applies separately to each insured. How is an ordinary insured supposed to decipher this exclusion applies this way and this exclusion applies that way under the severability of insurance provision when that kind of nuance is nowhere in the severability of insurance provision? The other thing I want to emphasize, and I don't think this is news to anyone, this is not a competition between which interpretation is, quote, right or correct or better or more popular. The focus is whether an ordinary insured could read this interpretation to provide coverage. Mr. Foley doesn't have to show that this policy is clear and ambiguous or clearly and unambiguously provides coverage, doesn't have to provide the, quote, better interpretation, even though Mr. Foley submits that we have. The point is that if Mr. Foley's interpretation passes that threshold of reasonableness, it must be enforced. I see I'm at the end of my time, so I'll conclude with a few seconds left on the clock. Very well. Thank you. Right under the wire. Thank you both, counsel, for your argument and briefing in this case. This matter is submitted and this panel is in recess until tomorrow. Thank you, everyone. Thanks, guys. Good seeing you.
judges: OWENS, MILLER, Pregerson